

# UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TALMADGE SEYMOUR #87657** | **CIVIL ACTION** |
| **versus** | **NO. 04-1903** |
| **BURL CAIN, WARDEN** | **SECTION: "R" (1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Fee_____
Process_____
X  Dktd_____
✓  CtRmDep_____
_____ Doc. No _____

Petitioner, Talmadge Seymour, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On October 29, 1997, he was convicted of second degree murder in violation of La.Rev.Stat.Ann. § 14:30.1.[2] On November 5, 1997, he was sentenced to a term of life imprisonment, without benefit of probation, parole, or suspension of sentence, with credit for time served.[3] On March 15, 2000, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction and sentence.[4] He then filed with the Louisiana Supreme Court an application for supervisory and/or remedial writs[5] which was denied on March 9, 2001.[6]

On or about July 17, 2001, petitioner filed with the state district court an application for post-conviction relief[7] which was denied on August 8, 2001.[8] He next filed with the Louisiana Fourth Circuit Court of Appeal an application for a writ of review[9] which was denied on December

---

[2] State Rec., Vol. III of VII, minute entry dated October 29, 1997.

[3] State Rec., Vol. III of VII, minute entry dated November 5, 1997.

[4] State v. Seymour, No. 98-KA-1130 (La. App. 4th Cir. Mar. 15, 2000) (unpublished); State Rec., Vol. II of VII.

[5] State Rec., Vol. II of VII.

[6] State ex rel. Seymour v. State, 786 So.2d 120 (La. 2001) (No. 2000-KH-1667); State Rec., Vol. II of VII.

[7] State Rec., Vol. VII of VII.

[8] State Rec., Vol. II of VII, minute entry dated August 8, 2001.

[9] State Rec., Vol. VI of VII.

5, 2001.[10] He then filed with the Louisiana Supreme Court an application for a writ of certiorari[11] which was denied on November 22, 2002.[12]

On or about December 10, 2002, petitioner filed with the state district court a second application for post-conviction relief[13] which was denied on December 13, 2002.[14] He next filed with the Louisiana Fourth Circuit Court of Appeal an application for a writ of review[15] which was denied on January 22, 2003.[16] He then filed with the Louisiana Supreme Court an application for a writ of certiorari[17] which was denied on March 19, 2004.[18] He filed a request for rehearing[19] which the Louisiana Supreme Court denied on June 2, 2004.[20]

---

[10]   State v. Seymour, No. 2001-K-1681 (La. App. 4th Cir. Dec. 5, 2001) (unpublished); State Rec., Vol. II of VII.

[11]   State Rec., Vol. II of VII.

[12]   State ex rel. Seymour v. State, 829 So.2d 1039 (La. 2002) (No. 2002-KH-0152); State Rec., Vol. II of VII.

[13]   State Rec., Vol. I of VII.

[14]   State Rec., Vol. VI of VII, minute entry dated December 13, 2002.

[15]   State Rec., Vol. VI of VII.

[16]   State v. Seymour, No. 2002-K-2775 (La. App. 4th Cir. Jan. 22, 2003) (unpublished); State Rec., Vol. II of VII.

[17]   State Rec., Vol. II of VII.

[18]   State ex rel. Seymour v. State, 869 So.2d 838 (La. 2004) (No. 2003-KH-0685); State Rec., Vol. II of VII.

[19]   State Rec., Vol. II of VII.

[20]   State ex rel. Seymour v. State, 876 So.2d 71 (La. 2004) (No. 2003-KH-0685); State Rec., Vol. II of VII.

On June 25, 2004, petitioner filed this federal application for *habeas corpus* relief.[21]
In support of his application, he raises the following claims:

1.    The trial court erred in failing to properly address petitioner's
      Brady[22] claim;

2.    There was insufficient evidence to support petitioner's
      conviction;

3.    Petitioner's indictment was invalid;

4.    Petitioner's trial counsel was ineffective;

5.    Petitioner was denied his right to a fair trial by not being
      allowed to present alibi witnesses; and

6.    The identification made by Felipie Gonzales was suggestive
      and coerced.

On December 7, 2004, the state filed a response in which it conceded that petitioner's
federal application was timely filed[23] and that he exhausted his state court remedies with respect to
the claims asserted in that application.[24]

---

[21]  Rec. Doc. 2.

[22]  See Brady v. Maryland, 373 U.S. 83 (1963).

[23]  Rec. Doc. 5, p. 12.

[24]  Rec. Doc. 5, p. 13.

Motions to Stay

After filing this federal application, petitioner also filed with this Court motions asking that the federal *habeas corpus* proceedings be stayed.[25] In those motions, petitioner indicates that, on or about May 19, 2004, he filed with the state district court an application for a writ of *habeas corpus* asserting a claim based on State v. Dilosa, 848 So.2d 546 (La. 2003).[26] In Dilosa, the Louisiana Supreme Court held, *inter alia*, that La.C.Cr.P. art. 413(C), which established a unique method for the selection of the grand jury venire and foreperson in Orleans Parish, violated La.Const. art. III, § 12(A), which prohibits the passage of local laws concerning criminal actions. Petitioner argues that Dilosa should be given retroactive effect and his indictment declared legally invalid. His petition asserting that claim was denied by the state district court on June 16, 2004,[27] and the Louisiana Fourth Circuit Court of Appeal denied a related writ application on August 26, 2004.[28] On or about September 10, 2004, petitioner filed a related writ application with the Louisiana Supreme Court which remains pending. In his motion, he requests that the instant federal proceedings be stayed until the Louisiana Supreme Court rules on that application.

---

[25] Rec. Docs. 7 and 12; see also Rec. Docs. 8 and 9.

[26] The Court notes that Rec. Doc. 8, which concerns the Dilosa claim, has been docketed as a motion to amend the federal *habeas corpus* petition. It is unclear whether that is accurate, in that the Dilosa claim is included in the original petition. However, to the extent that filing was intended as a motion to amend, the motion is **GRANTED**, and the claim is addressed later in this opinion.

[27] Rec. Doc. 7, minute entry dated June 16, 2004.

[28] State v. Seymour, No. 2004-K-1211 (La. App. 4th Cir. Aug. 20, 2004) (unpublished); Rec. Doc. 7.

In <u>Rhines v. Weber</u>, 125 S.Ct. 1528 (2005), the United States Supreme Court held that, in some circumstances, it is appropriate for a federal district court to stay *habeas corpus* proceedings in which a petitioner has filed a "mixed petition" containing both exhausted and unexhausted claims in order to allow the petitioner to present his unexhausted claims in state court and then return to federal court for review of his perfected petition.  In reaching that decision, however, the Court held:

> Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings.  It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.  Cf. <u>Duncan [v. Walker</u>, 533 U.S. 167, 180 (2001)] ("[D]iminution of statutory incentives to proceed first in state court would ...  increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce").
>
> For these reasons, stay and abeyance should be available only in limited circumstances.  Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.  Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

<u>Rhines</u>, 125 S.Ct. at 1534-35; <u>see also</u> <u>Neville v. Dretke</u>, ___ F.3d. ___, 2005 WL 2010049, at *3-4 (5th Cir. Aug. 23, 2005) (a stay under <u>Rhines</u> is not warranted where a claim is "plainly meritless" on the basis that it is procedurally barred).

In the instant case, petitioner's <u>Dilosa</u> claim is plainly meritless for two reasons. First, for the reasons set forth later in this opinion, any claim challenging the selection or composition of the grand jury is procedurally barred in this federal proceeding because petitioner failed to file a pretrial motion to quash the indictment on that basis as required by state law.[29] Moreover, even if the <u>Dilosa</u> claim were not procedurally barred, petitioner could not be granted relief in this proceeding based on that claim. <u>Dilosa</u> was based on the Louisiana Supreme Court's finding that certain articles of the Louisiana Code of Criminal Procedure violated the *state* constitution's prohibition on the passage of local laws concerning criminal actions. Nevertheless, the fact that those provisions violated the *state* constitution is of no moment in a federal proceeding. Federal *habeas corpus* relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; <u>Engle v. Issac</u>, 456 U.S. 107, 119 (1983).[30]

---

[29]  See pages 17-22 of this opinion.

[30]  Moreover, the Court notes that it is fairly clear that petitioner's claim is doomed to failure in the Louisiana Supreme Court in light of its recent decision in <u>State v. Harris</u>, 892 So.2d 1238 (La. 2005) (unpublished appendix available on Westlaw), <u>cert. denied</u>, ___ U.S. ___, 2005 WL 1276315 (Oct. 3, 2005), in which that court held:

> The defendant urges that his indictment should have been quashed as it was issued by an unconstitutionally selected grand jury, grand jury foreperson, and grand jury venire, relying on <u>State v. Dilosa</u>, 02-2222 (La. 6/27/03), 848 So.2d 546. In <u>Dilosa</u>, this Court struck down as unconstitutional La.C.Cr.P. art. 412 and La. R.S. 15:114 in their entirety, the introductory phrases of La.C.Cr.P. arts. 413(B) and 414(B) and La.C.Cr.P. arts. 413(C) and 414(C) in their entirety. The offending provisions together provided procedures, applicable only in Orleans Parish, for the selection of the grand jury venire, the impaneling of the grand jury, selection of the grand jury foreman, the time for impaneling grand juries and the period of service, and the rotation of the judges who select and control the grand jury. This Court found the provisions were "local laws" concerning "criminal actions" which regulated the

Because petitioner's unexhausted claim is plainly meritless, the Court recommends that the motions to stay these proceedings be denied. Further, for the following reasons, the Court recommends that the instant petition for federal *habeas corpus* relief be dismissed with prejudice.

---

"practice" of Orleans Parish criminal courts in violation of La. Const. art. III, § 12(A)(3).

In this case, the grand jury that indicted the defendant in October of 1993 and the foreman of that grand jury, were selected while the applicable procedures declared unconstitutional in Dilosa were all in effect. However, the record reflects, and appellate counsel in brief concedes, that no motion to quash the indictment was ever filed in this case. A criminal defendant must assert a due process or equal protection claim regarding the selection and composition of a grand jury in a motion to quash filed prior to trial or waive any complaint in that regard. Deloch v. Whitley, 96-1901 p. 2 (La.11/22/96), 684 So.2d 349, 350. The defendant, thus, has waived review of this issue by his failure to file a pretrial motion to quash the indictment.

Even if the claim was not procedurally defaulted, the defendant is not entitled to relief. The statute and codal provisions in Dilosa were declared unconstitutional solely because they were local laws in violation of the state constitution, La. Const. art. III, § 12(A). "The constitutional prohibition against local laws which underlies the Dilosa decision simply reflects a policy decision that legislative resources and attention should be concentrated upon matters of general interest and that purely local matters should be left to local governing authorities." State v. Williams, 2003- 0091 p. 3 (La. App. 4 Cir. 1/14/04), 866 So.2d 296, 298, writ denied, 2004- 0438 (La. 6/25/04), 876 So.2d 831, citing Morial v. Smith & Wesson Corp., 2000-1132 p. 22 (La.4/3/01), 785 So.2d 1, 17, cert. denied, 534 U.S. 951, 122 S.Ct. 346, 151 L.Ed.2d 262 (2001); Kimball v. Allstate Ins. Co., 97- 2885 p. 4 (La. 4/14/98), 712 So.2d 46, 50. Thus, "the substantial rights of a criminal defendant are not affected *per se* solely because he is indicted by a grand jury selected pursuant to local laws passed by the Louisiana State legislature." Id. Where a criminal defendant fails to show that his substantial rights were affected, he is not entitled to relief. Id.; State v. Rhea, 2004- 0091 p. 7 (La. App. 4 Cir. 5/19/04), 876 So.2d 131, 135, writ denied, 2004-0901 (La. 10/1/04), 883 So.2d 1005; State v. Newman, 2003-1721 p. 16 (La. App. 4 Cir. 7/7/04), 879 So.2d 870, 880; see also State v. Mercadel, 2003-3015 p. 8 (La.5/25/04), 874 So.2d 829, 834 (a person can challenge the constitutionality of a statute only if the statute seriously affects his or her rights). The defendant has made no showing that his substantial rights were effected; thus, this assignment of error lacks merit.

Harris, 892 So.2d 1238, unpublished appendix at **3-4 (footnotes omitted) (available on Westlaw).

Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

<u>Facts</u>

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> On June 9, 1997, the victim, Jose Marrero, was shot and killed at 2020 Seventh Street. Yolanda Gibson, a friend of the victim, testified that ten or fifteen minutes before the shooting, she and the victim were returning from the grocery store when the defendant, whom Yolanda knew as Teekee, approached them. Yolanda went into the house with the packages from the store, and the defendant and the victim went into an alley to talk. Shortly thereafter, Yolanda heard a shot, ran out of the house, and saw that the victim had been shot. The bleeding victim told her Teekie shot him. She called to her daughter Angelette to call 911. She later identified the defendant in a photographic lineup.
>
> Angelette testified that she saw her mother and the victim returning from the grocery store. She saw the victim and the defendant, who was her uncle, go into the alley. She heard the shot and saw the defendant "walking fast" from the alley shortly after the shot with money in his hand. She told him she was going to call the police and tell them that he had shot the victim, and she did. She later identified him in a photographic lineup.
>
> Officer Lloyd McMasters, who was the dispatcher when the call came in, testified that he received the call at 6:30 p.m. He recorded a detailed description of the perpetrator, the direction in which he ran, and that his name was TeeTee.
>
> Latoya Gibson, another daughter of Yolanda, testified that she had heard the defendant asking the victim for money earlier in the afternoon. Immediately before the shooting, she heard the defendant call the victim to the back of the alley after the victim returned from the grocery. She heard the shot and saw the defendant running out of

- 10 -

the alley. She saw him hand a gun to two boys on a bike, who were apparently waiting for him.

Felipe Casales testified that he saw the defendant running down Seventh Street. He saw him hand the gun to another man on a bike.

Enchantra Gibson, Yolanda's niece, testified that she saw the defendant and the victim together about three hours before the murder. The defendant was trying to borrow money, but the victim refused. The defendant said he would "get him." She also identified the defendant in a photographic lineup.

Officer Peter Hansche, who responded to the call, testified that the victim's pockets had been pulled out. At the scene, Canales conveyed to him the name of the defendant through broken English.

The victim's employer, Michael Henican, testified that the victim was in the habit of cashing his paychecks rather than depositing them.

Other witnesses testified that the victim often gave small amounts of money to his neighbors, who were heavy drinkers, and to children for ice cream.

The defense called Shelton Watson, who testified that he was with the defendant until 6:30 p.m. on the day of the crime. The defense also called Yolanda Gibson, who testified that she knew the defendant as Teekie, and that she had another friend named T, but she did not see "T" the day of the crime. Officer Wayne Rumore testified that the defendant told him after his arrest that he was at Simmon's bar at the time of the crime. Joelle Taplette, the defendant's sister, testified that the defendant is known as Teekie, but is called Teetee by his family. She further testified that the defendant came to her the day of the crime and asked her to lend him $5.00, which she refused to do, but her husband gave him $20.00. She said that she saw him at Simmon's bar earlier, and then he came over to her house and interrupted her while she was praying around 6:00 p.m.[31]

---

[31] State v. Seymour, No. 98-KA-1130, at pp. 1-3 (La. App. 4th Cir. Mar. 15, 2000) (unpublished); State Rec., Vol. II of VII.

<u>Brady Claim</u>

Petitioner argues that the trial court erred in failing to properly address his <u>Brady</u>[32]

claim. Regarding <u>Brady</u> claims, the United States Fifth Circuit Court of Appeals has stated:

> <u>Brady</u> requires the state to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial.
> Under <u>Brady</u>, to establish that the state has breached this duty, the defendant must show that (1) the state withheld evidence, (2) the evidence was favorable to the accused, and (3) the evidence is material to guilt or punishment. This duty extends to both exculpatory and impeachment evidence.

<u>DiLosa v. Cain</u>, 279 F.3d 259, 262-63 (5th Cir. 2002) (internal quotation marks and citations

omitted).

> Regarding the materiality requirement, the Fifth Circuit has noted:

> Evidence is *material* only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different; and such reasonable probability is a probability sufficient to undermine confidence in the outcome.

<u>Martin v. Cain</u>, 246 F.3d 471, 477 (5th Cir. 2001) (internal quotation marks and brackets omitted).

The Fifth Circuit has further explained:

> The Supreme Court has imposed four criteria for determining whether evidence is material. First, materiality does not require the defendant to demonstrate by a preponderance of the evidence that omitted evidence would have resulted in acquittal. Second, he need not weigh the withheld evidence against the disclosed evidence to show he would have been acquitted by the resulting totality. Third, if evidence is found material, there is no need to conduct a harmless error analysis. Fourth, the withheld evidence should be considered as a whole, not item-by-item. The sum of these four guideposts means that to show a due process violation when the state withholds

---

[32] <u>See Brady v. Maryland</u>, 373 U.S. 83 (1963).

- 12 -

> evidence, a defendant need not prove that his trial necessarily would
> have had a different outcome; a lack of faith in the result is sufficient.

DiLosa, 279 F.3d at 263 (citation omitted).

"Whether documents must be produced and whether they are material under Brady

is a mixed question of law and fact." Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999).

Therefore, this Court is required to defer to the state court's decision rejecting petitioner's Brady

claim unless the decision "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §

2254(d)(1).

On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected petitioner's

claim, holding:

> The defendant argues that the trial court erred in failing to
> properly address the claims of the defense as to Brady material.
> Following the testimony of Officer McMasters, who testified
> that he heard the word "Tee-Tee" as the name of the perpetrator, the
> State wanted to play a 911 tape to the jury. In order to do so, the state
> needed to recall Angelette Gibson to the stand, so she could identify
> the 911 call. The defense also wanted the tape played so that they
> could argue that Angelette identified the perpetrator as "Tee-Tee"
> rather than Teekie. The State then explained that Angelette did not
> name any perpetrator on the tape, because a 911 tape is by necessity
> short. The State said the name "Tee-Tee" came from a transcript of
> a call of an officer on the scene relaying the name to the command
> desk. The defense argued that it had been denied access to the 911
> tape up to that point in time, and that it was Brady material that
> should have been previously produced. The State responded that the
> tape had been in the evidence room the whole time, that the defense
> had easy access to it, and that the State had not deprived the defense
> of access. The State then called Angelette back to the stand and
> played the tape.
> The due process clause of the Fourteenth Amendment to the
> United States Constitution requires the disclosure upon request of
> evidence which is favorable to the accused when the evidence is
> material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83

S.Ct. 1194 (1963). This rule has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of the witness may be determinative of guilt or innocence. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763 (1972). The Brady rule is based on due process of law. "[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial, that is, evidence favorable to the defendant which is material to guilt or punishment." State v. Rosiere, 488 So.2d 965, 970 (La. 1986).

  The defendant now argues he was deprived of access to the tape. In fact, as established by the record, the tape was in the evidence room all along, fully available to the defendant. Moreover, the defense was totally aware of the tape and its contents as revealed in the transcript of a motion hearing held on September 12, 1997. The State withheld no evidence.

  This assignment is without merit.[33]

In the instant case, the state court identified the proper standard, i.e. the Brady standard, and applied it in a reasonable manner. Therefore, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's Brady claim.

<u>Sufficiency of the Evidence</u>

Petitioner claims that there was insufficient evidence to support his conviction. The United States Fifth Circuit Court of Appeals has noted that claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979):

  In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any

---

[33] State v. Seymour, No. 98-KA-1130, at pp. 3-5; State Rec., Vol. II of VII.

rational trier of fact could have found the essential elements of the
crime beyond a reasonable doubt."

Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Jackson, 443 U.S. at 319).  This

Court may find the evidence sufficient even though the facts additionally support one or more

reasonable hypotheses which are consistent with petitioner's claim of innocence.  Foy v. Donnelly,

959 F.2d 1307, 1316 (5th Cir. 1992); see also Gibson v. Collins, 947 F.2d 780, 783 (5th Cir. 1991).

"The Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence

determination, but rather whether it made a rational decision to convict or acquit.'"  Santellan, 271

F.3d at 193 (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A sufficiency of the evidence argument presents a mixed question of law and fact.

Taylor v. Day, Civil Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213

F.3d 639 (5th Cir. 2000).  Therefore, this Court must defer to the state court unless its decision

regarding the claim "was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected petitioner's

challenge to the sufficiency of the evidence, holding:

> The defendant argues that the evidence was insufficient to
> support a conviction for second degree murder.
> When assessing the sufficiency of evidence to support a
> conviction, the appellate court must determine whether, viewing the
> evidence in the light most favorable to the prosecution, any rational
> trier of fact could have found proof beyond a reasonable doubt of
> each of the essential elements of the crime charged.  Jackson v.
> Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State
> v. Jacobs, 504 So.2d 817 (La. 1987).
> In addition, when circumstantial evidence forms the basis of
> the conviction, such evidence must consist of proof of collateral facts

and circumstances from which the existence of the main fact may be inferred according to reason and common experience.  State v. Shapiro, 431 So.2d 372 (La. 1982).  The elements must be proven such that every reasonable hypothesis of innocence is excluded.  La. R.S. 15:438.  La. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt.  State v. Wright, 445 So.2d 1198 (La. 1984).  All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard.  State v. Jacobs, supra.

La. R.S. 14:30.1 provides that second degree murder is the killing of a human being when the offender has the specific intent to kill or inflict great bodily harm.  Here, there is no question that the victim was killed as a result of a gunshot at close range.  However, the defendant argues that the State did not prove identity.  Numerous witnesses, who knew the defendant, saw him running from the alley immediately after the victim was shot.  He was holding money in his hand after having asked the victim for money earlier in the day.  When the victim refused, he was heard to say that he would "get the victim."  He was seen handing a gun to another man.  Most importantly, the victim identified the defendant before he died.  The evidence was clearly sufficient to prove identity.

This assignment of error is without merit.[34]

In the instant case, the state court identified the proper standard, i.e. the Jackson standard, and applied it in a reasonable manner.  Therefore, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's claim challenging the sufficiency of the evidence.

---

[34] State v. Seymour, No. 98-KA-1130, at pp. 5-6; State Rec., Vol. II of VII.

Indictment

Petitioner claims that his indictment was invalid because (1) there was discrimination on the basis of race and gender in the selection of the grand jury foreperson; (2) qualified individuals were improperly excluded from service on the grand jury; and (2) the grand jury was selected pursuant to La.C.Cr.P. art. 413(C) which the Louisiana Supreme Court subsequently found violated the state constitution in State v. Dilosa, 848 So.2d 546 (La. 2003).

When the last state court to consider a petitioner's federal claim disposed of that claim on a either a substantive or procedural state law that is independent of the federal question involved and adequate to support the judgment, review of the claim is procedurally barred in federal court. Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001). In its response, the state correctly notes that, pursuant to Louisiana law, a claim challenging the manner of selection of the grand juries and their forepersons is waived if not asserted in a pretrial motion to quash. See La. C.Cr.P. 533(1) and 535(D); State v. Richthofen, 803 So.2d 171, 194 (La. App. 5th Cir. 2001); Williams v. Cain, 125 F.3d 269, 274 (5th Cir. 1997). No pretrial motion to quash the indictment was filed in petitioner's case on the grounds now asserted by petitioner.[35] In its response, the state notes: "Respondent recognizes, however, that the state courts did not expressly rely on this procedural bar but

---

[35] A motion to quash was filed by the defense on the other grounds, i.e. that the Louisiana first degree murder statute was unconstitutional and that, if the case proceeded to trial, petitioner would be tried before a "death-qualified" jury. State Rec., Vol. III of VII, Motion to Quash Indictment. Petitioner also filed a *pro se* motion to quash based on an allegation that he was not timely arraigned. State Rec., Vol. III of VII, Motion to Quash. No issue regarding the composition or selection of the grand jury or its foreperson was raised in either motion to quash.

nevertheless asserts it as a defense."[36] Therefore, this Court must decide whether the state is entitled to raise that defense in this proceeding.

        The applicability of the procedural bar doctrine is often simple because the state court clearly and expressly rejects the claim by referencing a state procedural rule.  In the instant case, however, not one of three state courts which considered petitioner's claims regarding the grand jury bothered to assign any reason whatsoever in denying petitioner's claims.  The state district court denied petitioner's claim without explanation;[37] the Louisiana Fourth Circuit Court of Appeal simply stated that it found "no error in the trial court's denial of relator's application for post conviction relief";[38] and the Louisiana Supreme Court cryptically denied the related writ application without assigning reasons.[39]  In light of that fact, the question is whether this Court may still find that the state courts nevertheless decided petitioner's claim based on a state procedural rule so as to bar federal review of that claim.

        Initially there was some confusion over this issue arising from the decision in Harris v. Reed, 489 U.S. 255 (1989), in which the United States Supreme Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a

---

[36]  Rec. Doc. 5, p. 26.

[37]  State Rec., Vol. VI of VII, minute entry dated December 13, 2002.

[38]  State v. Seymour, No. 2002-K-2775 (La. App. 4th Cir. Jan. 22, 2003) (unpublished); State Rec., Vol. II of VII.

[39]  State ex rel. Seymour v. State, 869 So.2d 838 (La. 2004) (No. 2003-KH-0685); State Rec., Vol. II of VII.

state procedural bar." Id. at 263 (internal quotation marks omitted). However, in Coleman v. Thompson, 501 U.S. 722 (1991), the United States Supreme Court clarified that ruling, holding that a clear and express statement that a state procedural bar is being applied is required *only* if it fairly appears that the last state court addressing the claim rested primarily on federal law or was interwoven with federal law. Id. at 735-40. However, if the state court decision makes no mention of federal law and it fairly appears that the decision rested primarily on state law, the federal procedural bar applies even in the absence of a clear and express invocation by the state court of the state procedural bar. Id. at 740. The United States Fifth Circuit Court of Appeals has noted and followed the holding in Coleman. See, e.g., Hogue v. Johnson, 131 F.3d 466, 492-98 (5th Cir. 1997); Young v. Herring, 938 F.2d 543 (5th Cir. 1991). Accordingly, the fact that the state courts denied petitioner's grand jury claims without explanation does not, in and of itself, mean that the claim is not procedurally barred in this federal proceeding.

In this case, the state courts made no reference whatsoever to federal law in rejecting petitioner's grand jury claims. Moreover, it fairly appears that the state court decisions rested primarily on the state procedural rule that challenges to the grand jury are waived unless presented in a pretrial motion to quash. For example, the claims presented by petitioner are complex ones which, if decided on the merits, would have required thorough examination of the evidence regarding the composition and selection of the grand jury and its foreperson. However, the state district court rejected petitioner's claims no more than three days after the post-conviction application was filed, without requiring either a response from the state or an evidentiary hearing. There is no indication whatsoever that the state district or appellate courts considered petitioner's evidence regarding his

claims or decided the claims on the merits. Under these circumstances, the Court finds that the only logical conclusion is that the state courts based their decision on the state procedural rule.

Nevertheless, the Court's conclusion that the state courts denied petitioner's grand jury claims based on the state procedural rule does not necessarily mean that the claims are procedurally barred. The federal procedural bar applies only if the state procedural rule "is both independent of the merits of the federal claim and an adequate basis for the court's decision." Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001). However, it is clear that Louisiana's rule that grand jury challenges are waived unless presented in a pretrial motion to quash is an independent and adequate state ground so as to support the application of a procedural bar. See, e.g., Williams v. Cain, 125 F.3d 269, 274-76 (5th Cir. 1997).

"When the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner can demonstrate neither.

Petitioner cannot meet the "cause and prejudice" test in light of the United States Fifth Circuit Court of Appeals' decision in Pickney v. Cain, 337 F.3d 542 (5th Cir. 2003). In that case, petitioner's claim regarding racial discrimination in the selection of the grand jury foreperson was procedurally defaulted in state court because no motion to quash had been filed. The Fifth Circuit found that petitioner could not overcome the resulting federal procedural bar based on the "cause and prejudice" requirement, holding:

> We need not address whether [petitioner] has made a showing of "cause" because we are confident that he has not been prejudiced.

> United States v. Shaid, 937 F.2d 228, 234 (5th Cir. 1991).  After
> reviewing the trial record, we have no doubt that, if [petitioner] had
> been successful in having his indictment quashed, the State of
> Louisiana would have sought and obtained a second indictment. ...
> Given the strength of the State's case, a successful grand jury
> challenge would have served no purpose other than to delay the trial.
> Accordingly, [petitioner] has failed to prove actual prejudice.

Id. at 545.  Similarly, this Court has reviewed the overwhelming evidence against this petitioner and

reached the same conclusion.  Accordingly, petitioner cannot overcome the procedural bar in this

case based on the "cause and prejudice" test.

Therefore, petitioner's claims are procedurally barred unless the application of the

bar will result in a fundamental miscarriage of justice.  In order to establish a "fundamental

miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent

of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not

commit the crime for which he was convicted." Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001)

(citations omitted). The United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner
> show that it is more likely than not that no reasonable juror would
> have found petitioner guilty beyond a reasonable doubt ... in light of
> all of the evidence, including that alleged to have been illegally
> admitted (but with due regard to any unreliability of it) and evidence
> tenably claimed to have been wrongfully excluded or to have become
> available only after trial.

Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted).

Applying that standard, and considering the overwhelming evidence of petitioner's guilt in this case,

the Court finds that petitioner cannot make a persuasive showing that he is actually innocent of the

charges against him.  Therefore, he cannot demonstrate that any miscarriage of justice will result

from application of the procedural bar.  Accordingly, petitioner's grand jury claims are procedurally barred in this federal proceeding.

<u>Ineffective Assistance of Counsel</u>

Petitioner next contends that his counsel was ineffective.  In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  <u>See</u> <u>id</u>. at 697.  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  <u>Id</u>.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  <u>See</u> <u>Strickland</u>, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  <u>See</u> <u>Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Petitioner contends that his counsel was ineffective in numerous respects. The Court will address each of petitioner's contentions separately.

First, petitioner argues that his counsel was ineffective in failing to "request impeachment material" regarding the victim, such as "material concerning his origin, place of birth, educational background, schooling in the English language, immigration status, and birth certificate in order to impeach [his] dying declaration."[40] In the last reasoned decision addressing that claim, the Louisiana Fourth Circuit Court of Appeal held:

> [Relator] contended that counsel was ineffective in failing to impeach
> the victim's dying declaration. Relator argued that the victim could

---

[40] Rec. Doc. 2, supporting memorandum, p. 9.

> not speak English, and thus his dying declaration was fabricated. At
> trial, numerous witnesses who knew him testified that they saw
> relator running from the alley immediately after the victim was shot.
> Relator has not established prejudice.[41]

This Court fails to see, and petitioner has failed to explain, how any materials concerning the

victim's origin, place of birth, educational background, immigration status, or birth certificate would

have in any way whatsoever cast doubt of the veracity of petitioner's dying declaration. He also has

produced no evidence that the victim had any problems speaking in English. Additionally, even if

the victim did not speak English fluently, there is no reason to believe that his dying declaration was

misunderstood. The person to whom the dying declaration was made, Yolanda Gibson, had known

the victim for approximately seven months and considered him a "good friend."[42] One can therefore

reasonably assume that they were able to communicate with one another. Moreover, the dying

declaration was simple and straightforward, requiring no great fluency in the English language.

According to Gibson, the declaration was as follows:

> A.    ... I ran to him and I helped him to the ground and I said,
> "damn, what happened". And he said, "he shot me". Said,
> "who". He said, "Teekie".
>
> Q.    He said, "Teekie."?
>
> A.    Yes, he did.[43]

---

[41]  State v. Seymour, No. 2001-K-1681, at p. 1 (La. App. 4th Cir. Dec. 5, 2001) (unpublished);
State Rec., Vol. II of VII.

[42]  State Rec., Vol. V of VII, transcript of October 28 and 29, 1997, p. 57.

[43]  State Rec., Vol. V of VII, transcript of October 28 and 29, 1997, p. 60; see also State Rec.,
Vol. IV of VII, transcript of October 28 and 29, 1997, p. 282.

Further, in any event, as the state court noted, petitioner clearly cannot establish prejudice with respect to this claim, in that the evidence against him was so overwhelming that there is no reason to believe that any of the alleged impeachment evidence would have resulted in a different verdict. Petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.[44]

---

[44] Petitioner also mentions in passing that his counsel was ineffective in failing to object to the admission of the dying declaration on the basis that the state had not proven that the victim believed his death was imminent when he made the statement. If petitioner means to assert this as a separate claim, it is likewise meritless..

Pursuant to the Louisiana Code of Evidence, a dying declaration is not excludable as hearsay. A dying declaration is "[a] statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death." La. Code Evid. art. 804(B)(2). As was explained in State v. Matthews, 679 So.2d 977 (La. App. 4th Cir. 1996):

Our Supreme Court has previously held that such a statement may be admitted as a dying declaration if made when the declarant is conscious of his condition and aware of his approaching demise, even if the statement is elicited by questions. State v. Verrett, 419 So.2d 455, 456-67 (La. 1982) and cases cited therein. The victim need not express his awareness in direct terms; the necessary state of mind may be inferred from the circumstances surrounding the statement. State v. Henderson, 95-0267, pp. 5-6 (La. App. 4th Cir. 4/3/96), 672 So.2d 1085, 1089. The more serious the injury and the greater the impairment, the more probable is his belief that the end is near:

[N]o absolute rule can be laid down by which to decide with certainty whether the declarant, at the time of making his statement, really expected to die, yet when the wound is from its nature mortal, and when, as a matter of fact, the deceased shortly after making his statement died, the courts have uniformly held that the declarant really believed that death was impending, and his statement has been admitted as a dying declaration.

State v. Augustus, 129 La. 617, 619, 56 So. 551, 552 (1911).

Matthews, 679 So.2d at 981.

Second, petitioner argues that his counsel was ineffective in failing to subpoena John Matthews, Zelda Finney, Patrick Taplette, Marlene Wheeler, and Wanda Seymour as witnesses. In the last reasoned decision addressing that claim, the Louisiana Fourth Circuit Court of Appeal held:

> Relator next contended that counsel was ineffective for failing to call several alibi witnesses. Although relator provided the names of several potential witnesses and their alleged testimony, he did not provide affidavits for any of them to support his contention.[45]

However, the court noted: "[R]egarding relator's contention that counsel was ineffective for failing to call alibi witnesses, we reserve relator's right to reurge this portion of his claim of ineffective assistance of counsel in the event he acquires affidavits from his alibi witnesses."[46] The record does not reflect that petitioner accepted that invitation to reurge his claim with supporting affidavits.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v.

_____

In a pretrial hearing in the instant case, the trial judge ruled: "I heard what [Yolanda Gibson] said as far as Mr. Marrero's statement. I think it fits – it's certainly going to fit the criteria for a dying declaration so I don't have any problem with the admissibility." State Rec., Vol. III of VII, transcript of September 12, 1997, p. 16. The trial judge was clearly correct, in light of the nature of the victim's wound, the obvious severity of his condition after the shooting, and the fact that he did soon thereafter die of the wound. Any further objection on the part of defense counsel would have been meritless and, therefore, counsel cannot be found to have performed deficiently in failing to make one. See Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions.").

[45] State v. Seymour, No. 2001-K-1681, at p. 1; State Rec., Vol. II of VII.

[46] State v. Seymour, No. 2001-K-1681, at p. 3; State Rec., Vol. II of VII.

Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (citing Sayre v. Anderson, 238 F.3d 631, 635-36 (5th Cir.

2001)). To show the prejudice required to support an ineffective assistance claim premised on the

failure to call a witness, a petitioner "'must show not only that [the] testimony would have been

favorable, but also that the witness would have testified at trial.'" Evans, 285 F.3d at 377 (quoting

Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).

 With respect to Zelda Finney and Marlene Wheeler, petitioner furnished neither the

state courts nor this Court any evidence in support of his bald assertions regarding the failure to

subpoena those witnesses. He has not provided affidavits from those individuals or any other

corroboration that they would have testified in a manner consistent with petitioner's version of the

facts or, for that matter, that they would have testified at trial at all. Petitioner has, therefore, failed

to establish either that counsel's performance was deficient or that prejudice resulted from the failure

to subpoena those witnesses.

 With respect to John Matthews, Patrick Taplette, and Wanda Seymour, petitioner has

attached to his federal application[47] purported affidavits from those proposed witnesses.[48] However,

the proposed testimony of these witnesses, while helpful to the defense, was hardly crucial.

 The affidavit from Matthews states in pertinent part:

---

[47] Rec. Doc. 2.

[48] When a petitioner presents a federal court with evidence not presented to the state courts, it can, but does not necessarily, raise an exhaustion problem. See Morris v. Dretke, 413 F.3d 484, 491-92 (5th Cir. 2005). However, the state has not raised an exhaustion defense. See Rec. Doc. 5, p. 13. Additionally, 28 U.S.C. § 2254(b)(2) "allows a federal court, in its discretion, to *deny habeas relief* on the merits, regardless of whether the applicant has exhausted state remedies." Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998) (emphasis in original). In light of those considerations, and in the interest of judicial economy, the undersigned would recommend that petitioner's claim be denied on the merits even if the new affidavits might arguably raise an exhaustion problem.

> I, John Matthews, am the owner and proprietor of the Daiquiri Shoppe, Located at 3400 S. Claiborne Ave., and on June 9, 1997, between the hour of 6:15 p.m., until 6:30 p.m., Mr. Talmadge Seymour and Mr. Shelton Watson were in my place of business.
>
> I was never subpoenaed nor investigated, in hopes of testifying as to Mr. Talmadge Seymour presence in my place of business, with Mr. Shelton Watson on June 9, 1997, between the hour of 6:15 p.m., until 6:30 p.m.

Petitioner contends that Matthews' testimony could have been used to establish that he was elsewhere at the time of the murder. However, this proposed testimony would merely have been cumulative, in that Shelton Watson testified to the same alleged facts at trial.[49] In addition, Joelle Taplette testified that petitioner and Watson left her house at approximately 5:50 or 5:55 p.m. headed to the daiquiri shop.[50]

The affidavit from Patrick Taplette states in pertinent part:

> I, Patrick E. Taplette, do hereby swear that on June 9, 1997, at approximately 3:00 p.m., Talmadge Seymour was in my residence, receiving the sum of ($20.00) dollars, at the above date and time, from me Patrick Taplette.
>
> I was never subpoenaed to testify, nor was I called as a witness to give my testimony regarding this matter. I appeared at all Mr. Seymour's pre-trial hearings as well as his trial. Mr. Joseph Meyers avoided all contact with me, on August 12, 1997, August 25, 1997, September 5, 1997, September 12, 1997, September 26, 1997. Plus I was willing to testify at Mr. Seymour's trial on October 28, 1997, but was never called as a witness.

Petitioner contends that Taplette's testimony could have been used to impeach Enchantra Gibson's testimony that she had seen petitioner and the victim together at approximately 3:00 p.m.[51] In that

---

[49] State Rec., Vol. IV of VII, transcript of October 28 and 29, 1997, pp. 254-61.

[50] State Rec., Vol. IV of VII, transcript of October 28 and 29, 1997, pp. 384-85.

[51] State Rec., Vol. IV of VII, transcript of October 28 and 29, 1997, pp. 203-04.

both Taplette and Gibson gave only approximate times, Taplette's testimony would not necessarily impeach Gibson. Additionally, in any event, petitioner's whereabouts earlier in the day were hardly the critical facts on which he was convicted. Rather, it was the victim's dying declaration coupled with eyewitnesses who saw petitioner flee the alley immediately after the shooting, give the gun to someone on a bicycle, and ride away.

The affidavit from Seymour states in pertinent part:

> I, Wanda Seymour, appeared at the Trial of Talmadge Seymour on October 28, 1997, in hopes of giving my testimony as to the fact that Talmadge left home for work, wearing a Red Tommy Hilfiger shirt with a pair of Blue jeans and work shoes, on June 9, 1997, plus I would have testified that Talmadge never owned nor wore Reebox Tennis Shoes.
> However, after trying to speak with his attorney on several occasions, he refused to speak with anyone concerning Talmadge case, he stated that he was not interested.

The Court assumes that petitioner would use this testimony in an attempt to impeach the testimony of Angelette Gibson regarding what he was allegedly wearing at the time of the murder.[52]

Even if petitioner's counsel could be considered deficient in failing to investigate and subpoena John Matthews, Patrick Taplette, and Wanda Seymour, the value of the proposed testimony pales when considered in light of the overwhelming evidence of petitioner's guilt. Accordingly, petitioner has fallen far short of establishing prejudice, i.e. that there is a reasonable probability that the result of the proceeding would have been different if counsel had subpoenaed these witnesses. Without such a showing of prejudice, his claim necessarily fails.

---

[52] State Rec., Vol. V of VII, transcript of October 28 and 29, 1997, pp. 100 and 135.

Third, petitioner argues that his counsel was ineffective in failing to investigate and impeach Enchantra, Angelette, and Yolanda Gibson. In the last reasoned decision addressing that claim, the Louisiana Fourth Circuit Court of Appeal held:

> Relator next argued that counsel was ineffective for failing to impeach Enchantra Gibson, Angelette Gibson, and Yolanda Gibson. He maintained that an investigation would have revealed that Enchantra testified under duress and to gain her mother's release from jail. He also alleged that Angelette testified that Precious Love, not Angelette, made the 911 call and that Yolanda lied when she said that she did not know where Precious Love lived. Relator failed to show that the outcome of the case would have been different had this information been presented at trial.[53]

Petitioner has failed to demonstrate that the state court's decision on that issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Fourth, petitioner argues that his counsel was ineffective in failing to have the identification made by Angelette Gibson suppressed. In the last reasoned decision addressing that claim, the Louisiana Fourth Circuit Court of Appeal held:

> Finally, relator contended that counsel was ineffective by not seeking to suppress the identification evidence of Angelette Gibson. Relator did not present any support for his claim that Angelette's identification was perjured. Relator's claim that his trial counsel was ineffective is without merit. He has failed to show that trial counsel's performance was so deficient as to deprive him of due process.[54]

---

[53] State v. Seymour, No. 2001-K-1681, at pp. 1-2; State Rec., Vol. II of VII.

[54] State v. Seymour, No. 2001-K-1681, at p. 2; State Rec., Vol. II of VII.

Again, petitioner has failed to demonstrate that the state court's decision on that issue was contrary

to, or involved an unreasonable application of, clearly established federal law, as determined by the

Supreme Court of the United States.

Fifth, petitioner argues that his counsel was ineffective because he labored under a

conflict of interest. In the last reasoned decision addressing that claim, the Louisiana Fourth Circuit

Court of Appeal held:

> Relator's second claim was that there was a conflict of interest
> because his court-appointed attorney, Joseph Meyer, was
> compensated by the court. He again raised the issues of counsel's
> failing to impeach the victim's dying declaration and failing to call
> alleged alibi witnesses. Relator has not shown that the adequacy of
> counsel's performance was affected by his receiving compensation
> from the court. This claim has no merit.[55]

Prior petitioners in this Court have raised this same claim of an alleged conflict of interest arising

from the trial judge's practice of using judicial funds to supplement the indigent defender's salary;

however, it has been found that the arrangement, in and of itself, did not create an unconstitutional

conflict of interest. See, e.g., Trepagnier v. Cain, Civil Action No. 03-3612, at pp. 6-8 (E.D. La.

Nov. 3, 2004) (Chasez, M.J.) (Report and Recommendation approved and adopted by Barbier, J.,

on Nov. 22, 2004); Ford v. Cain, Civil Action No. 04-0050, 2004 WL 2998560, at *3-5 (E.D. La.

Dec. 27, 2004) (Duplantier, J.). This Court agrees. As noted in Trepagnier, "Stripped to essentials,

[petitioner's] counsel was no different from any other court-appointed attorney whose salary

ultimately comes from the public fisc. It is those lawyers' oath and professional independence which

---

[55] State v. Seymour, No. 2001-K-1681, at p. 2; State Rec., Vol. II of VII.

insulates them from the other branches of government." <u>Trepagnier</u>, Civil Action No. 03-3612, at p. 8.

In this case, the transcript makes clear that petitioner's counsel zealously represented his client. There is no evidence whatsoever that counsel tempered his efforts to curry favor with the judge or to ensure that his income would continue to be supplemented by the court. Petitioner's conclusory allegations to the contrary are insufficient to raise a constitutional issue. <u>Miller v. Johnson</u>, 200 F.3d 274, 281 (5th Cir. 2000).

In light of the foregoing, the Court finds that petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

Sixth, petitioner argues that his counsel was ineffective in failing to file a motion to quash the indictment on the ground that La.C.Cr.P. art. 413 was unconstitutional for the reasons later set forth by the Louisiana Supreme Court in <u>State v. Dilosa</u>, 848 So.2d 546 (La. 2003). However, as noted previously in this opinion, counsel's performance is deficient if it is "objectively unreasonable." <u>United States v. Acklen</u>, 47 F.3d 739, 742 (5th Cir. 1995). "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690, 104 S.Ct. at 2066). At the time of counsel's failure to file a motion to quash, the Louisiana Supreme Court's opinion in <u>Dilosa</u> had not been issued. Even if petitioner's counsel perhaps could have foreseen the viability of such a claim, a fact that petitioner has not established, it nevertheless does not necessarily follow that it was objectively unreasonable for counsel not to assert such a claim. Where the law

regarding a claim is unsettled and counsel could reasonably have believed that a claim would not prevail, counsel is not constitutionally deficient in failing to raise the claim. See Givens v. Cockrell, 265 F.3d 306, 309 (5th Cir. 2001); see also Sanders v. Cain, Civil Action No. 02-0971, 2002 WL 32191037, at *28 (E.D. La. Dec. 6, 2002) (counsel was not ineffective in failing to file a motion to quash where law regarding the issue was unsettled at the time), adopted, 2003 WL 21920894 (E.D. La. Aug. 8, 2003), certificate of appealability denied, No. 03-30844 (5th Cir. Feb. 3, 2004) (unpublished). Therefore, it cannot be said that petitioner's counsel performed deficiently in failing to file a motion to quash the indictment. Moreover, even if the Court were assume that counsel performed deficiently in that regard and that such a motion to quash would have been granted, the state, based on the overwhelming evidence, could simply have procured a new indictment from a properly empaneled grand jury. Because a successful grand jury challenge would have served no purpose other than to delay the trial, petitioner cannot establish that he was prejudiced by the failure to file such a motion. Pickney v. Cain, 337 F.3d 542, 545 (5th Cir. 2003).

### Alibi Witnesses

Petitioner claims that his right to a fair trial was denied because he was not allowed to present alibi witnesses. This claim is simply a variation on petitioner's prior claim that his counsel was ineffective in failing to call certain alibi witnesses. In the last reasoned decision addressing that claim, the Louisiana Fourth Circuit Court of Appeal held:

> Relator next contended that he was denied his right to a fair trial. He argues that he was not able to present a defense because alibi witnesses were not called to testify. This claim was discussed

above [in connection to the ineffective assistance of counsel claim] and has no merit.[56]

This Court likewise finds that this related, repetitive claim should be denied for the reasons previously set forth.

### Tainted Identification

Petitioner argues the identification made by Felipie Gonzales should have been suppressed because it was suggestive and coerced. Petitioner contends that he was first identified by Gonzales at a pretrial hearing held on October 3, 1997. Petitioner contends that the identification is tainted because Gonzales was accompanied to court that day by Deontranice Gibson, who allegedly sat by Gonzales prior to the hearing and pointed out petitioner to Gonzales. Petitioner asserts that these events tainted Gonzales' identification.

The pretrial hearing held on October 3, 1997, was a hearing to suppress Gonzales' identification.[57] Although Gonzales' testimony at that hearing was somewhat hampered by the fact that he was testifying through an interpreter, the gist of his testimony is that he saw a man running on the street. The man threw a gun to another guy on a bicycle and both men then left on bicycles. At some point thereafter, Gonzales was twice shown a photographic lineups by Detective Rumore. On the first occasion, he said one of the photographs looked like the man but he was not certain. That photograph was an old photograph of petitioner. On a later date, Rumore returned with a second photographic lineup which included a more recent photograph of petitioner. At that time, Gonzales identified petitioner's photograph. Gonzales also identified petitioner in court at that

---

[56]  State v. Seymour, No. 2001-K-1681, at p. 2; State Rec., Vol. II of VII.

[57]  Gonzales is identified in the transcript of that hearing as "Phillipe Cozales."

hearing. Based on the testimony, the trial court denied the motion to suppress the identification made by Gonzales.[58]

At trial, Rumore also testified regarding the circumstances of the two photographic lineups.[59] He stated that the first lineup was shown to Gonzales on June 14, 1997.[60] At that first lineup, Gonzales tentatively identified an old photograph of petitioner but was unsure because petitioner was thinner than the photograph reflected. Rumore then returned on June 19, 1997,[61] with a more recent photograph reflecting a thinner petitioner, and Gonzales identified him based on that photograph.

Gonzales also testified at trial, although again his testimony was somewhat hampered by the use of an interpreter.[62] However, his testimony was consistent with his testimony at the pretrial hearing and with the testimony of Rumore. Additionally, he again made an in-court identification of petitioner.[63]

In the last reasoned decision addressing petitioner's claim challenging Gonzales' identification, the Louisiana Fourth Circuit Court of Appeal held:

---

[58] State Rec., Vol. III of VII, transcript of October 3, 1997.

[59] State Rec., Vol. IV of VII, transcript of October 28 and 29, 1997, pp. 223–27, 317-18, 327-332, and 358-62.

[60] State Rec., Vol. IV of VII, transcript of October 28 and 29, 1997, pp. 317-18.

[61] State Rec., Vol. IV of VII, transcript of October 28 and 29, 1997, pp. 331-32.

[62] State Rec., Vols. IV and V of VII, transcript of October 28 and 29, 1997, pp. 172-201.

[63] State Rec., Vol. V of VII, transcript of October 28 and 29, 1997, p. 184.

Relator's final claim was that the identification by Felipie Gonzales was based on "contaminate influence." Relator argued that Gonzales was escorted to court by Deontranice Gibson, the sister of the State's key witness and sat next to him at trial. Relator stated that Gonzales had not identified him prior to the tainted identification. At trial, Officer Peter Hansche testified that Gonzales conveyed the name of the defendant at the scene. This claim has no merit.[64]

As an initial matter, the Court notes that the trial transcript does not support the state court's finding. At trial, Officer Hansche testified that he was told the name of the *victim*, not the *perpetrator*, by Gonzales.[65] Nevertheless, for the following reasons, the Court finds that petitioner is not entitled to relief based on this claim.

Regarding such challenges, the United States Fifth Circuit Court of Appeals has noted:

> The admissibility of identification evidence is governed by a two-step analysis. Initially, a determination must be made as to whether the identification procedure was impermissibly suggestive. Next, the court must determine whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification.

Herrera v. Collins, 904 F.2d 944, 946 (5th Cir. 1990) (footnote omitted). A court need not address the second step if the first step is not met: "If the identification procedure is not impermissibly suggestive, the inquiry ends." Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir. 1997).[66]

---

[64] State v. Seymour, No. 2001-K-1681, at p. 2; State Rec., Vol. II of VII. In an accompanying footnote, the court noted: "According to the appeal opinion, the witness's name was Felipe Casales."

[65] State Rec., Vol. V of VII, transcript of October 28 and 29, 1997, p. 30. In the transcript, Gonzales is referred to as "Felipe Cansales."

[66] However, if a determination must be made regarding the second step, the Fifth Circuit has offered the following guidance:

Petitioner's claim is that Gonzales' identification was tainted by the actions of Deontranice Gibson at the pretrial hearing on October 3, 1997. However, the trial testimony established that Gonzales' identification of petitioner was made months earlier on June 19, 1997, at the time he was shown the second photographic lineup. Petitioner does not argue, and the record does not suggest, that the identification procedure used on June 19 was in any way suggestive. Accordingly, any claim with respect to the photographic lineup necessarily fails.

To the extent that petitioner is perhaps challenging the in-court identification at either the October 3 pretrial hearing or the trial itself, that claim is similarly meritless for several reasons. First, as noted, Gonzales had already identified petitioner based on the photographic line-up, months prior to either the hearing or the trial. Second, petitioner has produced no evidence whatsoever in support of his allegations regarding Deontranice Gibson. Third, nearly all in-court identifications are suggestive to some extent, in that it is normally readily apparent the accused is the person sitting

---

In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Supreme Court indicated that "reliability is the linchpin" when examining the totality of the circumstances to "determin[e] the admissibility of identification testimony." Id. at 114, 97 S.Ct. at 2253. Even an impermissibly suggestive identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability. The Supreme Court has set forth several factors to be considered when reviewing the reliability of a pre-trial identification. These factors include

(1) the opportunity of the witness to view the criminal, (2) the witness's degree of attention, (3) the accuracy of the description, (4) the witness's level of certainty, (5) the elapsed time between the crime and the identification, and (6) the corrupting influence of the suggestive identification itself.

Herrera, 904 F.2d at 947.

at the defense table with counsel.  The allegations regarding Gibson's actions are hardly more suggestive than that.  And yet Gonzales testified at trial that he made his in-court identification at the October 3 hearing based on his memory, not on petitioner's position at the defense table.[67]  It was then within the purview of the jury to determine what weight, if any, to give Gonzales' identification.

Because petitioner had failed to establish that Gonzales' identification from the photographic line-up, the pretrial hearing, or the trial resulted from an unduly suggestive identification procedure, his claim must fail.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that petitioner's motions to stay these proceedings, Rec. Docs. 7 and 12, be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Talmadge Seymour be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this twenty-fourth day of October, 2005.

---

[67] State Rec., Vol. V of VII, transcript of October 28 and 29, 1997, pp. 181-82.

SALLY SHUSHAN
UNITED STATES MAGISTRATE JUDGE