UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TALMADGE SEYMOUR                                    CIVIL ACTION

VERSUS                                             NO: 04-1903

BURL CAIN                                          SECTION: R(1)

## ORDER AND REASONS

This matter was referred to the United States Magistrate Judge for the purpose of conducting a hearing, if necessary, and submitting proposed findings of fact and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Before the Court are petitioner's objections to the magistrate judge's report and recommendation.  Having reviewed *de novo* the petition, the record, the applicable law, the report and recommendation of the United States Magistrate Judge, and the petitioner's objections to the report and recommendation, the Court finds that the petition should be DISMISSED with prejudice.

I.    **FACTUAL BACKGROUND**

Petitioner Talmadge Seymour is a prisoner at the Louisiana State Penitentiary in Angola, Louisiana.  On October 29, 1997, petitioner was convicted of second-degree murder, and on November 5, 1997, he was sentenced to a term of life imprisonment without parole.  At trial, the state presented evidence that on the afternoon of June 9, 1997, petitioner shot and killed the victim, Jose Marrero, outside of 2020 Seventh Street in New Orleans.[1] The state's evidence showed that petitioner had asked the victim for money earlier in the day and had been refused.  Several hours later, when the victim and Yolanda Gibson were returning from the grocery store, petitioner, who was also known as "Teekie," approached them and told the victim that he needed to speak with him.  Ms. Gibson went into the house with the bags from the store, and petitioner and the victim went into the alley to talk. A short time later, Ms. Gibson heard a shot.  She went outside, saw that the victim had been shot, and yelled to one of her daughters to call 911.  The 911 call was received at approximately 6:30 p.m.  The victim then told Ms. Gibson that

---

[1]The following factual description is adapted from the opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal of petitioner's conviction.  *See State v. Seymour*, No. 98-KA-1130 (La. Ct. App. Mar. 15, 2000) (unpublished) (State Rec. Vol. II).

"Teekie" had shot him.  Immediately after the shooting, witnesses saw petitioner walking quickly from the alley with a wad of money in his hand.  Witnesses also saw petitioner hand a gun to another man on a bicycle as he left the scene.  Each of the state's eyewitnesses later identified petitioner in a photographic lineup.  Petitioner put on the testimony of Shelton Watson, who testified that he was with the defendant until approximately 6:30 p.m. on the day of the shooting.  Petitioner's sister, Joelle Taplette, also testified.  She stated that her husband had given petitioner $20.00 earlier that afternoon.  Ms. Taplette also testified that she saw petitioner and Mr. Watson outside of Simmons' Bar that afternoon, and that petitioner also came to her house and interrupted her while she was praying at approximately 6:00 p.m.

## II.  PROCEDURAL HISTORY

After he was convicted and sentenced, petitioner appealed his conviction on the grounds that the trial court failed to properly address his claim that the prosecution suppressed evidence favorable to him, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and that the evidence at trial was insufficient to support his conviction.  The Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction on March 15, 2000, and

the Louisiana Supreme Court denied petitioner's writ application
without opinion on March 9, 2001. *See State v. Seymour*, No. 98-
KA-1130 (La. Ct. App. Mar. 15, 2000) (unpublished) (State Rec.
Vol. II); *State* ex rel. *Seymour v. State*, 786 So. 2d 120 (La.
2001) (State Rec. Vol. II).

Petitioner then filed a motion for post-conviction relief
with the state trial court, asserting that he received
ineffective assistance of counsel, that he was denied the right
to a fair trial because he was not allowed to present alibi
witnesses, and that the identification made by one of the state's
witnesses who saw petitioner running from the crime scene was
impermissibly suggestive. The trial court denied petitioner's
application on August 8, 2001. (*See* State Rec. Vol. II). The
Louisiana Fourth Circuit Court of Appeal and the Louisiana
Supreme Court both later denied petitioner's writ applications.
*See State v. Seymour*, No. 2001-K-1681 (La. Ct. App. Dec. 5, 2001)
(unpublished) (State Rec. Vol. II); *State* ex rel. *Seymour v.
State*, 829 So. 2d 1039 (La. 2002) (State Rec. Vol. II).

Petitioner filed a second application for post-conviction
relief in the state courts on December 10, 2002. In the new
application, petitioner alleged that he was indicted by an
unlawfully constituted grand jury and that his counsel was
ineffective for failing to file a motion to quash the indictment

4

on that ground at trial.  The trial court denied petitioner's application without opinion just three days later, on December 13, 2002.  (*See* State Rec. Vol. VI).  The Fourth Circuit denied petitioner's writ application on January 22, 2003.  *State v. Seymour*, No. 2002-K-2775 (La. Ct. App. Jan. 22, 2003) (unpublished) (State Rec. Vol. II).  The Louisiana Supreme Court denied petitioner's application on March 19, 2004, and it denied his motion for reconsideration on June 2, 2004.  *See State* ex rel. *Seymour v. State*, 869 So. 2d 838 (La. 2004) (State Rec. Vol. II); *State* ex rel. *Seymour v. State*, 876 So. 2d 71 (La. 2004) (State Rec. Vol. II).

In May 2004, petitioner filed a petition for a writ of *habeas corpus* with the state trial court.  In that petition, petitioner asserted claims concerning the selection of the grand jury that were similar to those raised in his second application for post-conviction relief.  That application was denied by the state district court on June 16, 2004.  (*See* Rec. Doc. 7).  The Fourth Circuit Court of Appeal denied petitioner's writ application on August 26, 2004.  (*See* Rec. Doc. 7).  On December 9, 2005, the Louisiana Supreme Court also denied petitioner's application.  *See State* ex rel. *Seymour v. State*, 916 So. 2d 1051 (La. 2005).

While that application was pending, petitioner filed a

5

petition for *habeas* relief under 28 U.S.C. § 2254 in this Court. His petition in this Court includes all of the claims that he asserted on direct appeal and in his two applications for post-conviction relief in the state courts.  Specifically, petitioner asserts:  (1) that the trial court did not properly address his *Brady* claim; (2) that the evidence at trial was insufficient to support his conviction; (3) that the grand jury that indicted him was improperly constituted; (4) that his trial counsel was ineffective; (5) that he was denied the right to a fair trial because his alibi witnesses were not called to testify; and (6) that the identification of one of the state's witnesses was suggestive and coerced.

On December 27, 2004, petitioner moved to stay these proceedings to allow him to exhaust his state remedies with respect to the claims in his pending state *habeas* petition.[2]  On October 25, 2005, the United States Magistrate Judge issued a report and recommendation on petitioner's claims.  The magistrate judge recommended that petitioner's claims be dismissed with

_____

[2]As the Louisiana Supreme Court has now denied petitioner's state *habeas* petition, petitioner's motion to stay is denied as moot.  Petitioner now also moves to supplement his petition in this Court with the now-exhausted claims from his state *habeas* petition.  As petitioner's state court petition asserts essentially the same claims concerning the grand jury selection process that are already included in his petition, the Court grants petitioner's motion to supplement his petition.

prejudice.  Petitioner has filed objections to the magistrate
judge's report and recommendation.


**III. DISCUSSION**

**A.    Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996
prohibits a federal *habeas* court from granting a state prisoner's
application for a writ of *habeas corpus* with respect to claims
adjudicated on the merits in state court unless the state court
adjudication resulted in a decision that (1) was contrary to, or
involved an unreasonable application of clearly established
federal law as determined by the Supreme Court; or (2) resulted
in a decision that was based on an unreasonable determination of
the facts in light of the evidence presented in the state court
proceeding.  *See* 28 U.S.C. § 2254(d).  A decision is contrary to
clearly established federal law if the state court arrives at a
conclusion opposite to that reached by the Supreme Court on a
question of law, or if the state court decides a case differently
than the Supreme Court has on a set of materially
indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362,
412 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).
A state court decision involves an unreasonable application of
federal law if the state court unreasonably applies the correct
governing legal principle to the facts of the prisoner's case.

7

*See Williams*, 529 U.S. at 412; *Hill*, 210 F.3d at 485.  The state court's findings of fact are entitled to a presumption of correctness, and they can be rebutted only by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

**B.   Analysis**

1.   Brady *Claim*

Petitioner's first claim is that the trial court erred in denying his *Brady* claim.  Petitioner asserts that he was prejudiced by the state's failure to disclose to him the tape of a 911 call made shortly after the shooting.

The Supreme Court has held that the suppression of evidence that is material to either guilt or punishment violates due process whether or not the state acted in good faith.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  To establish a *Brady* claim, the petitioner must demonstrate that:  (1) the prosecution suppressed evidence, (2) the evidence was favorable to the petitioner, and (3) the evidence was material. *See Pippen v. Dretke*, 434 F.3d 782, 789 (5th Cir. 2005).

The Louisiana Fourth Circuit Court of Appeal rejected this claim on direct appeal because it found that the 911 tape was available to the defense at all times and that no evidence was suppressed within the meaning of *Brady*.  *See State v. Seymour*,

8

No. 98-KA-1130 (La. Ct. App. Mar. 15, 2000) (unpublished) (State
Rec. Vol. II).  The magistrate judge recommended dismissing
petitioner's claim on this same ground.  In his objections to the
magistrate judge's recommendation, petitioner does not address
the state court's factual finding that the tape was not
suppressed by the prosecution.  Rather, petitioner simply
reiterates his earlier argument that the tape was material.  In
the absence of any reason to question the state court's factual
determination that the 911 tape was at all times available to the
defense, the Court concludes that petitioner has not shown that
the state court's decision involved an unreasonable application
of federal law.  Petitioner's *Brady* claim is therefore dismissed.


    2.  *Sufficiency of the Evidence*

    Petitioner next asserts that the evidence before the state
court was insufficient to support his conviction because there
was insufficient evidence on the issue of identification.

    When considering a *habeas* challenge to the sufficiency of
the evidence, a federal district court must determine only
whether the state court unreasonably determined that, "viewing
the evidence in the light most favorable to the prosecution, [a]
rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443

9

U.S. 307, 319 (1979).  In making this determination, the Court must resolve all credibility issues in favor of the prosecution. *See Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (citing *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999)).

The state appellate court found that there was ample evidence to support petitioner's conviction.  The court noted that the evidence presented at trial showed that: (i) multiple witnesses who knew petitioner saw him running from the alley in which the shooting occurred immediately after the shooting; (ii) that petitioner had asked the victim for money earlier that day and was holding money in his hand as he fled the alley; (iii) that petitioner was seen handing a gun to another man on a bicycle after the shooting; and (iv) that the victim identified petitioner as the shooter before he died.  *See State v. Seymour*, No. 98-KA-1130 (La. Ct. App. Mar. 15, 2000) (unpublished) (State Rec. Vol. II).

Petitioner argues that the state courts erred in finding that there was sufficient evidence to support his conviction because:  (a) none of the witnesses could confirm that he and the victim were alone in the alley at the time of the shooting; (b) petitioner offered an alibi defense; and (c) the victim's dying declaration was not mentioned in the police report.

Viewing the evidence in the light most favorable to the

prosecution, however, as is required under *Jackson*, the state court could easily conclude that the evidence outlined above was more than sufficient to support a guilty verdict.  First, the state presented multiple witness who testified that they saw petitioner leave the scene and hand a gun to another man. Regardless of whether any witness could confirm that petitioner and the victim were alone in the alley, a reasonable juror viewing this evidence in combination with the state's other evidence could easily find petitioner guilty beyond a reasonable doubt.  Second, given the Court's obligation to resolve credibility determinations in favor of the prosecution, that petitioner presented an alibi defense does not render the prosecution's evidence insufficient.  Third, although the victim's dying declaration was not mentioned in Officer Rumore's police report, Officer Rumore testified at trial that the omission was an oversight on his part.  (*See* State Rec. Vol. V) (Trial Transcript at 336-37, 352-53).  The Court therefore finds that the state appellate court did not unreasonably apply federal law in finding that there was sufficient evidence at trial to support petitioner's conviction.

11

3.   *Challenge to the Indictment*

Petitioner's claims relating to the grand jury are three-fold.  First, he claims that his indictment should have been dismissed because his grand jury was selected pursuant to Article 413(C) of the Louisiana Code of Criminal Procedure, which the Louisiana Supreme Court later found violated the Louisiana state constitution.  *See State v. Dilosa*, 848 So. 2d 546, 551 (La. 2003).  Second, petitioner asserts that the process for selecting grand jury foremen was flawed because it permitted discrimination on the basis of race and gender.  Third, petitioner argues that qualified people were improperly excluded from grand jury service.

Petitioner first raised these claims in his second state application for post-conviction relief and in his state *habeas* petition.  Each of these claims was denied without substantive opinion at all levels of the state court system.  The state argues that this Court should not consider the merits of petitioner's grand jury claims because petitioner procedurally defaulted those claims by failing to raise them at trial.  The state concedes that none of the state courts expressly invoked petitioner's failure to raise the grand jury claims at trial as a ground for denying his claim, but argues that the state courts' failure to address the merits of petitioner's claims indicates

12

that they viewed the claims as procedurally barred.

The magistrate judge agreed with the state and found that petitioner's grand jury claims were procedurally barred. The magistrate judge noted that "the only logical conclusion is that the state courts based their decision on the state procedural rule." (*See* Rec. Doc. 15, at 20). The magistrate judge also found that petitioner had not shown cause and prejudice sufficient to overcome his procedural default and had not shown that the application of the procedural bar would result in a fundamental miscarriage of justice.

Petitioner does not dispute that he did not raise his grand jury claims at trial. Rather, petitioner objects to the magistrate judge's recommendation on the ground that a federal *habeas* court should not give effect to a state procedural bar when no state court has expressly relied on the procedural bar.

A federal *habeas* court will not consider the merits of a federal claim when the state courts denied the claim on the basis of a state procedural rule that is adequate to support the decision and independent of the merits of the claim. *See, e.g., Dretke v. Haley*, 541 U.S. 386, 392 (2004) (noting that, under procedural default doctrine, "federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds"). To be an adequate ground for denying

13

relief, the state procedural rule must be strictly or regularly applied to similar claims. *See Johnson v. Puckett*, 176 F.3d 809, 824 (5th Cir. 1999). A petitioner can overcome a procedural default only by showing either cause for the default and actual prejudice or that the application of the state procedural bar would result in a fundamental miscarriage of justice. *See Pickney v. Cain*, 337 F.3d 542, 545 (5th Cir. 2003) (quoting *Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000)).

To determine whether the state courts denied relief based on an adequate and independent state procedural rule, courts look to the last reasoned state court decision to see whether it applied a procedural bar or addressed the merits of the claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."). In this case, however, *none* of the state courts issued a reasoned decision on petitioner's grand jury claims. Petitioner argues that in such a case, the federal court cannot presume that the state courts denied his claims based on a state procedural rule.

In *Harris v. Reed*, 489 U.S. 255 (1989), the Supreme Court adopted the "plain statement" rule for *habeas* cases brought under

14

28 U.S.C. § 2254.  Under the plain statement rule, "a procedural default does not bar consideration of a federal claim either on direct or *habeas* review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."  *Harris*, 489 U.S. at 263. (citation omitted).  Just two years later, however, in *Coleman v. Thompson*, 501 U.S. 722 (1991), the Court clarified that the plain statement rule of *Harris* is triggered only when the decision of the state court "fairly appear[s] to rest primarily on federal law or to be interwoven with federal law." *Coleman*, 501 U.S. at 735.  In *Coleman*, the petitioner belatedly appealed the denial of his state *habeas* application, and the state moved to dismiss the appeal as untimely.  *Id.* at 727.  The state supreme court granted the state's motion and dismissed the appeal without opinion.  *Id.* at 728.  The petitioner later filed a federal *habeas* petition, and the lower federal courts held that a number of his claims were procedurally defaulted because of his untimely state appeal.  *Id.* at 728-29.  The Supreme Court affirmed.  The Court rejected the petitioner's argument that the federal courts should consider his claims on the merits because the state court's decision did not plainly state that it was based on a state procedural rule.  It first noted that the *Harris* presumption did not apply beyond those cases in which the state

15

court's opinion at least arguably appears to be grounded in federal law. *See id.* at 734-40 ("The presumption at present applies only . . . where a federal court has good reason to question whether there is an independent and adequate state ground for the decision. . . . In the absence of a clear indication that the state court rested its decision on federal law, a federal court's task will not be difficult."). Looking to Coleman's claims, the Court found no indication that the state court's decision implicated federal law, and it held that the *Harris* rule was therefore inapplicable. *Id.* at 740. In so holding, the Court specifically emphasized both that the state court decision made no mention of federal law and that the state court clearly intended to grant the state's motion to dismiss, which was itself based entirely on the issue of procedural default. *Id.*

The Fifth Circuit has similarly found procedural default in a case in which no state court issued a reasoned decision on the petitioner's claims. *See Hogue v. Johnson*, 131 F.3d 466 (5th Cir. 1997). In *Hogue*, the petitioner, a Texas death row inmate, filed some six separate *habeas* petitions in the state courts. After the petitioner filed his fifth petition, the Texas Court of Criminal Appeals found that the petitioner had abused the writ and instructed the clerk of court not to accept additional

16

filings from the petitioner unless they first satisfied certain requirements. *Id.* at 471-72.  The petitioner thereafter submitted his sixth *habeas* petition, but the petition was not accepted for filing.  *Id.* at 472.

The petitioner later filed a federal *habeas* petition, which included several claims for relief that were first raised in the petitioner's sixth state *habeas* petition.  The district court held that several of those claims were procedurally defaulted because of the petitioner's failure to raise a contemporaneous objection at trial.  *Id.* at 486.  The petitioner argued on appeal that the district court erred in finding a procedural default because no Texas court had expressly denied the claims on the basis of the contemporaneous objection rule.  *Id.* at 492.  The Fifth Circuit nevertheless held that the procedural default rule was applicable.  The Court first stated that *Harris* applies only when the state court's decision fairly appears to be based on federal law.  *Id.* at 493.  As the record was clear that no Texas court had ever considered the merits of the petitioner's claims, the Fifth Circuit found that the *Harris* presumption was therefore inapplicable.  *Id*.  The *Hogue* court also found that the state courts' failure to expressly invoke the state procedural bar was unimportant under the circumstances of the case, since the claims at issue had not been presented to the state courts until the

17

petitioner's sixth state *habeas* petition, which was not accepted for filing. *Id.* Given that the petitioner's claims appeared clearly barred by the state procedural rule, the court concluded that "the most reasonable assumption, indeed the only reasonable assumption, is that had the Texas court ruled on the claim . . . it would have enforced the procedural bar of Hogue's failure to comply with the Texas contemporaneous objection rule." *Id.* at 495.

Other courts of appeals have similarly refused to presume that a state court that denies a request for post-conviction relief without opinion would disregard an otherwise-applicable state procedural bar and consider the claim on the merits. *See Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996) ("[W]e will assume that had the state court addressed petitioner's due process claim, it would not have ignored its own procedural rules and would have enforced the procedural bar."); *Epps v. Comm'r of Corr. Servs.*, 13 F.3d 615, 618-19 (2d Cir. 1994) ("We are not persuaded that the state trial court's summary rejection of the motion to set aside the verdict constituted the sort of 'reasoned state judgment' rejecting a federal claim that will suffice to raise a presumption that a subsequent silent affirmance did not rest on procedural default."); *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("*Coleman* and *Ylst* lead us to conclude that we

18

may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of the case.").

The Court therefore finds that the state courts' failure to issue a reasoned opinion on petitioner's grand jury claims does not prevent this Court from applying the procedural default rule. The record in this case shows clearly that petitioner's current grand jury claims were not raised at trial.  Under Louisiana law, challenges to the selection of the grand jury are deemed waived if the defendant does not move to quash the indictment on that basis at trial.  *See Deloch v. Whitley*, 684 So. 2d 349, 349-50 (La. 1996).  It is thus clear that petitioner's claims were subject to dismissal in the state courts on the basis of his procedural default.[3]  Moreover, as the magistrate judge correctly noted, nothing in any of the state court orders denying petitioner's grand jury claims suggests that those courts reached the merits of petitioner's claims.  The state district court

---

[3]Because petitioner's grand jury claims were not raised until his second application for post-conviction relief in the state courts, those claims are arguably subject to an additional procedural bar under article 930.4(E) of the Louisiana Code of Criminal Procedure, which provides that a successive application for post-conviction relief "may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."  La. Code Crim. Proc. Ann. art. 930.4(E); *see Ardison v. Cain*, 264 F.3d 1140 (5th Cir. 2001) (unpublished).

denied petitioner's claims just three days after his petition was filed, and none of the state courts mentioned federal law in denying petitioner's claims.  Under these circumstances, the magistrate judge correctly concluded that the state courts would have applied the state procedural bar and would not have considered the merits of his claims.

The Fifth Circuit has previously held that Louisiana's procedural rule that challenges to grand jury must be made by way of motion to quash at trial constitutes an independent and adequate state procedural rule.  *See Williams v. Cain*, 125 F.3d 269, 274-76 (5th Cir. 1997); *Neidhardt v. Jones*, No. Civ.A. 03-547, 2003 WL 22416385, at *4-5 (E.D. La. Oct. 22, 2003). Accordingly, the Court will not consider the merits of petitioner's grand jury claims unless he shows either cause and actual prejudice or that the application of the procedural bar would result in a fundamental miscarriage of justice.

Petitioner asserts that he has established cause for his procedural default because his counsel was ineffective for failing to file a motion to quash the indictment on these grounds at trial.  It is clear that ineffective assistance of counsel in violation of the Sixth Amendment can constitute the cause necessary to overcome a state procedural bar.  *See Pickney*, 337 F.3d at 545.  The *Pickney* court, however, went on to hold that

20

ineffective assistance of counsel is not grounds for excusing a procedural default when it is clear that the petitioner was not prejudiced by counsel's failure to file a motion to quash, *i.e.*, when it appears that, even had the indictment been quashed, the state would simply have obtained a second indictment against the petitioner. *See id.* (no prejudice shown when court had "no doubt that, if Pickney had been successful in having his indictment quashed, the State of Louisiana would have sought and obtained a second indictment"); *Sanders v. Cain*, No. Civ.A. 02-0971, 2003 WL 21920894, at *5 (E.D. La. Aug. 8, 2003) (no prejudice shown when "it is clear that a reconstituted grand jury would have indicted defendant again"). As the magistrate judge observed, given the substantial evidence supporting petitioner's conviction, the Court is confident that the state would simply have sought and obtained a new indictment had petitioner successfully moved to quash the initial indictment.

Moreover, petitioner has not cited any evidence to suggest that there was actual discrimination or underrepresentation in the selection of the grand jury that indicted him. The evidence cited by petitioner is taken directly from another case and addresses alleged underrepresentation of African-Americans and women as foremen on Orleans Parish grand juries over a 13-year period from 1987-2000. Although the Court expresses no opinion

21

on the merits of this claim, the Court cannot find that counsel's failure to make such a systemic challenge to the process of grand jury selection is so objectively unreasonable that it could constitute ineffective assistance of counsel.  Accordingly, petitioner's ineffective assistance of counsel claim is insufficient to excuse his procedural default.[4]

Petitioner also asserts that filing a motion to quash the indictment at trial would have been a "vain and useless act," because, before the Louisiana Supreme Court's 2003 decision in *State v. Dilosa*, 848 So. 2d 546, 551 (La. 2003), which held that the statutory provisions governing the selection of grand jurors in Orleans Parish were "local laws" concerning criminal actions in violation of the Louisiana state constitution, the Louisiana courts had consistently upheld the grand jury selection process for Orleans Parish.  The problem with petitioner's argument on this point is that *Dilosa* was decided solely on state law grounds, and thus petitioner's *Dilosa* claims are not cognizable in this federal *habeas* proceeding in any event.  Petitioner does

---

[4]In addition, petitioner's ineffective assistance of counsel claim on this issue is also arguably procedurally defaulted, as it was first raised in his second state application for post-conviction relief.  *See* La. Code. Crim. Proc. Ann. art. 930.4(E); *see also Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (ineffective assistance of counsel claim asserted to excuse procedural default may itself be procedurally defaulted).

not assert that it would have been futile to move to quash the indictment based on his federal claims concerning race and sex discrimination in the grand jury selection process.  Thus, petitioner has not shown cause and prejudice to overcome his procedural default.

Nor has petitioner shown that application of the state procedural rule would result in a fundamental miscarriage of justice.  To satisfy his burden of showing a fundamental miscarriage of justice, petitioner must show that he is actually innocent of the charges against him.  *See Finley v. Johnson*, 243 F.3d 215, 220-21 (5th Cir. 2001) ("The fundamental miscarriage of justice exception to the rule that state procedural default bars federal habeas review is limited to cases where the petitioner can make a persuasive showing that he is actually innocent of the charges against him.").  Petitioner has not argued that he meets this standard, and the Court therefore finds that application of the state procedural bar would not result in a fundamental miscarriage of justice.

Accordingly, the Court finds that petitioner's challenges to the make-up of the grand jury are procedurally defaulted, and the Court will not consider the merits of those claims.

4.   *Ineffective Assistance of Counsel*

In addition to his claim that counsel was ineffective for not moving to quash the indictment on the basis of discrimination in the grand jury selection procedures, petitioner raises a number of other claims concerning the effectiveness of his trial counsel.  Petitioner asserts that counsel was ineffective because:  (a) he failed to investigate and present evidence to impeach the victim's dying declaration; (b) he failed to call certain witnesses on petitioner's behalf; (c) he failed to investigate and impeach certain of the state's witnesses; (d) he failed to have the identification of one of the state's witnesses suppressed; and (e) he had an improper conflict of interest.

In order to succeed on a claim for ineffective assistance of counsel, petitioner must show both that counsel's performance was deficient and that the deficiency prejudiced his defense.  *See United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).  The requisite deficiency will be found only when counsel's performance is objectively unreasonable.  *See id.* (quoting *United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995)).  The Court applies a highly deferential standard when examining counsel's performance, making every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective

24

at the time of trial.  *See Jones v. Jones*, 163 F.3d 285, 301 (5th Cir. 1998) (quoting *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997)); *see also Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (on ineffective assistance claim, courts judge counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct) (quoting *Strickland*, 466 U.S. at 690). Further, to establish prejudice, the petitioner must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different.  *See Ward v. Dretke*, 420 F.3d 479, 487 (5th Cir. 2005).  An ineffective assistance claim must be denied if petitioner fails to make the requisite showing as to either deficiency or prejudice.  *See Givens v. Cockrell*, 265 F.3d 306, 310 (5th Cir. 2001).

a.  *Dying Declaration*

Petitioner argues that his counsel should have sought impeachment material on the victim concerning a number of topics, including his place of birth, educational background, immigration status, and his ability to speak English, in order to impeach the victim's dying declaration.  The magistrate judge determined that petitioner had not shown that counsel's failure to seek this information was unreasonable because much of the information was simply irrelevant and a showing that the victim was not fluent in

25

English would not undermine the credibility of the dying declaration.  The magistrate also found that petitioner had not established prejudice.

The Court finds that the magistrate judge correctly determined that the majority of the materials that petitioner claims counsel should have investigated are simply irrelevant to the reliability and veracity of the victim's dying declaration. The Court also agrees with the magistrate judge's conclusion that evidence tending to show that the victim did not speak English fluently would not cast significant doubt on his dying declaration, which was stated in very simple words.  In addition, the magistrate judge was also correct in finding that the state court did not unreasonably apply federal law in determining that petitioner had failed to show prejudice as a result of counsel's alleged error.  Given the substantial amount of evidence supporting the petitioner's conviction, he has not shown a reasonable probability that the outcome of his trial would have been different had counsel pursued this line of inquiry.

Finally, for the reasons stated at footnote 44 of the magistrate judge's report and recommendation, petitioner's assertion that counsel was ineffective for failing to object to the admissibility of the victim's dying declaration is also without merit.

26

     b.   *Failure to Call Alibi Witnesses*

Petitioner next asserts that his counsel was ineffective for failing to call five witnesses on his behalf.  The magistrate judge recommended that petitioner's claim be dismissed with respect to two of these individuals because petitioner had failed to provide affidavits establishing what they would have testified to if called as witnesses.[5]  With respect to the other three individuals, the magistrate judge concluded that even were petitioner's counsel deficient in failing to call them as witnesses, petitioner had failed to establish prejudice.

Because the decision of whether to call a particular witness to testify is one that falls squarely within the bounds of trial strategy, the Fifth Circuit has held that "the complaints of uncalled witnesses are 'disfavored' as a source of *Strickland* habeas review."  *United States v. Harris*, 408 F.3d 186, 190 (5th Cir. 2005) (quoting *Buckley v. Collins*, 904 F.2d 263, 266 (5th Cir. 1990)).  Moreover, in the absence of an affidavit describing what the would-be witness would testify to, mere assertions about

---

[5]The Fourth Circuit Court of Appeal denied petitioner's claim because he had failed to provide affidavits from any of the alleged witnesses.  It appears that petitioner appended the affidavits that he has provided this Court to a later state court filing.  (See State Rec. Vol. II) (supplemental filing with Louisiana Supreme Court, filed April 9, 2002).

what a person would have said are generally too speculative to support an ineffective assistance claim. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) ("[A]llegations of what the witness would have said are largely speculative.").

As petitioner has never supplied affidavits for two of the witnesses that he argues should have been called (Zelda Finney and Marlene Wheeler), the magistrate judge correctly concluded that petitioner has not established that counsel's failure to call them as witnesses was unreasonable. *See Sayre v. Anderson*, 238 F.3d 631, 636 (5th Cir. 2001). Petitioner has, however, provided affidavits from three of the people who he claims his counsel should have called as witnesses.

First, petitioner provides the affidavit of John Matthews, the owner of the Daiquiri Shoppe, who states that petitioner and Shelton Watson were at the Daiquiri Shoppe between 6:15 and 6:30 p.m. on June 9, 1997, the time of the murder. The magistrate judge found that petitioner had not shown that counsel was ineffective for not calling Mr. Matthews, because his testimony, while helpful to the defense, would have been cumulative of the testimony of Mr. Watson, who testified that he and petitioner were at the Daiquiri Shoppe until approximately 6:00 or 6:30 that afternoon.

The testimony of Mr. Matthews would to some degree be

28

cumulative of testimony already offered at trial concerning
petitioner's alibi. *See Murray v. Maggio*, 736 F.2d 279, 282 (5th
Cir. 1984) (ineffective assistance not shown when counsel failed
to call witness whose testimony "would have been merely
cumulative"). But regardless of whether the testimony would have
been cumulative, the Court is not persuaded that counsel's
failure to call Mr. Matthews can be considered unreasonable for
an additional reason. Officer Rumore's police report on the
murder and his testimony at petitioner's preliminary hearing
establish that he obtained a taped statement from petitioner
shortly after his arrest. In that statement, petitioner stated
that he was at Simmons' Bar, not the Daiquiri Shoppe, until after
dark on the day of the murder. This statement was played to the
jury at trial. (*See* State Rec. Vol. IV) (Trial Transcript at
231-34). Although Mr. Matthews' testimony would have
corroborated Mr. Watson's testimony, given the potential
inconsistency between petitioner's own statement to the police
and this additional alibi testimony, the Court cannot conclude
either that it was objectively unreasonable for counsel not to
call Mr. Matthews or that this failure prejudiced the defendant.

Second, petitioner submits the affidavit of Patrick
Taplette, who states that he gave petitioner $20.00 at
approximately 3:00 p.m. on the day of the murder. This testimony

29

would presumably be used to impeach the testimony of Enchantra
Gibson, who testified that she had seen petitioner and the victim
together at approximately 3:00 p.m. that day.  As the magistrate
judge noted, both Mr. Taplette and Ms. Gibson referred to
approximate times, so Mr. Taplette's testimony would not
necessarily undermine Ms. Gibson's testimony.  Moreover, because
this testimony would not be directly relevant to petitioner's
guilt or innocence, the Court finds that it was not unreasonable
for counsel not to call Mr. Taplette as a witness.  *Cf. Harris*,
408 F.3d at 190 (counsel's failure to call witnesses not
unreasonable when "none of the witnesses would have been able to
testify to anything relevant to Harris's guilt or innocence").

    Third, petitioner asserts that his sister, Wanda Seymour,
would have testified that petitioner left home on the morning of
June 9, 1997 wearing a red shirt and work shoes and that
petitioner did not own Reebok shoes.  This testimony would have
been used to impeach the testimony of Angelette Gibson, who
testified that petitioner was wearing a multi-colored shirt and
Reebok shoes at the time of the murder.  Again, this testimony is
only indirectly relevant to the ultimate question of guilt or
innocence, and the Court cannot find that it was necessarily
unreasonable for counsel not to call Ms. Seymour as a witness.
Even assuming it was error for petitioner's counsel not to have

30

Ms. Seymour testify, however, petitioner has not shown prejudice. Even if Ms. Seymour's testimony about what petitioner was wearing that morning undercut Ms. Gibson's description of petitioner's clothing at the time of the murder, there is no reasonable possibility that this would have altered the outcome of the case, considering the totality of the state's evidence against petitioner.

### c.  *Failure to Impeach Witnesses*

Petitioner next asserts that counsel was ineffective for failing to impeach certain statements by several of the state's witnesses.  Specifically, petitioner asserts that counsel should have uncovered that Enchantra Gibson testified in order to secure her mother's release from prison, that Angelette Gibson should have been impeached about whether she or another child, Precious Love, actually made the 911 call, and that Yolanda Gibson should have been impeached about her testimony that she did not know where Precious Love lived.  The Louisiana Fourth Circuit Court of Appeal rejected this claim because petitioner failed to show how the outcome of the case would have been different had counsel impeached the testimony in question.  *See State v. Seymour*, No. 2001-K-1681 (La. Ct. App. Dec. 5, 2001) (unpublished) (State Rec. Vol. II).  The magistrate judge correctly recommended dismissal

31

because the state court did not unreasonably apply federal law when it determined that petitioner had not shown how the desired impeachment would have affected the outcome at trial.

    d. *Failure to Suppress Identification of Angelette Gibson*

  Petitioner also asserts that his trial counsel should have sought to suppress Angelette Gibson's identification of petitioner at trial because it was based on perjured testimony. Because petitioner has wholly failed to support the assertion that any of Ms. Gibson's testimony was, in fact, perjured, the state court did not unreasonably apply federal law in holding that counsel was not ineffective for failing to make such a motion.

    e. *Conflict of Interest*

  Petitioner's final claim concerning trial counsel is that he had a conflict of interest because his salary was supplemented by the trial court.  The state court denied this claim because petitioner failed to show that counsel's performance was affected by the purported conflict. As the magistrate judge noted, two courts in this district have previously rejected identical claims that the pay arrangement in question created a conflict of

32

interest.  *See Ford v. Cain*, No. 04-0050, 2004 WL 2998560, at *5
(E.D. La. Dec. 27, 2004); *Trepagnier v. Cain*, No. 03-3612, slip
op. at 6-8 (E.D. La. Nov. 3, 2004) (magistrate judge's report and
recommendation).  The Court is not persuaded that petitioner's
counsel had an impermissible conflict of interest solely by
virtue of the fact that his salary was supplemented by the trial
court, and the state court did not unreasonably apply federal law
in denying this claim.


     5.   *Right to a Fair Trial*

     Petitioner argues that he was deprived of the right to a
fair trial because he was not permitted to have alibi witnesses
testify on his behalf.  The Court finds, as did the magistrate
judge, that this claim is merely duplicative of his ineffective
assistance of counsel claims.  Because the Court has already
rejected petitioner's ineffective assistance of counsel claims,
this claim must also fail.


     6.   *Tainted Identification*

     Petitioner's final claim is that Phillipe Cozales'
identification of petitioner should have been excluded as tainted
because, at an October 3, 1997 hearing on petitioner's motion to
suppress Mr. Cozales' identification, Deontranice Gibson, Yolanda

                              33

Gibson's sister, impermissibly pointed out the defendant to Mr. Cozales.

To succeed on a challenge to an identification procedure, petitioner must show that the identification procedure was impermissibly suggestive and that the suggestiveness created a substantial likelihood of misidentification. *See United States v. Hefferon*, 314 F.3d 211, 218-19 (5th Cir. 2002). Petitioner has failed to satisfy either of these requirements. First, Mr. Cozales identified petitioner in a photo array long before the October 3, 1997 hearing, so any suggestiveness at the October 3, 1997 hearing on petitioner's motion to suppress is irrelevant to Mr. Cozales' earlier identification. Moreover, as the magistrate judge stated, even if Ms. Gibson did point petitioner out at the October 3, 1997 hearing, such an action is hardly more suggestive than having the defendant seated in the courtroom at the defense table. In any event, Mr. Cozales testified at trial that he was identifying petitioner because he remembered seeing petitioner carrying a gun as he left the scene of the murder, not because petitioner was present at the suppression hearing. This claim is therefore without merit.

34

**IV.   CONCLUSION**

For the reasons stated above, and for the additional reasons provided in the United States Magistrate Judge's report and recommendation, petitioner's *habeas* petition is DISMISSED with prejudice.

New Orleans, Louisiana, this <u>29th</u> day of March, 2006.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

35